Filed 7/16/26  P. v. Rivers CA2/8

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>MARTIN RIVERS,<br><br>    Defendant and Appellant. | B346201<br><br>(Los Angeles County<br>Super. Ct. No. KA065451-01) |

APPEAL from an order of the Superior Court of Los Angeles County.  Victor D. Martinez, Judge.  Affirmed.

John F. Schuck, under appointment of the Court of Appeal, for Defendant and Appellant.

No appearance for Plaintiff and Respondent.

_____

Defendant and appellant Martin Rivers appeals from the trial court's order denying his petition for resentencing under Penal Code section 1172.6.[1]  We affirm.

The People charged defendant with the murder of Patrick Clark (§ 187, subd. (a); count 1), and with being a felon in possession of a firearm (§ 29800, former § 12021; count 2).  Firearm use allegations were alleged as to count 1 (§ 12022.53, subds. (b)–(d)).  It was also alleged defendant had suffered two prior convictions for serious felonies within the meaning of the "Three Strikes" law.

At the preliminary hearing on March 26, 2004, George Clark,[2] the father of the victim, testified.  George testified that on December 24, 2003, he and Patrick were in the garage of one of Patrick's friends.  There were three other people with them, and they were all playing darts while having a beer.  The group had been playing darts for 35 to 40 minutes when Rivers came to the garage and spoke to Patrick.  Patrick told defendant, "You owe me money, Marty."  Then Patrick and Rivers left the garage and walked down the driveway.  They walked to a location where George's view was obstructed by shrubs, and then George heard three gunshots, coming from the location where defendant and Patrick had been standing.  George ran over and saw Patrick lying on the grass.  Patrick was injured, and George saw defendant getting into a silver truck.  Defendant had a gun and asked George, "Did you want some, too?"  George also identified

---

[1]    All further undesignated statutory references are to the Penal Code.

[2]    We refer to George Clark and his son Patrick, the decedent, by their first names for clarity.

2

Rivers as the shooter in a photograph in the presence of law enforcement.

Detective Scott Fines of the Los Angeles County Sheriff's Department went to the location to investigate a homicide. Patrick's remains were on the grass and sidewalk when he arrived.

During his investigation, Fines interviewed Jose Pineira. Pineira told Detective Fines that he had guests at his home. Then something happened between Patrick and a person he knew as Robert or Travieso. Patrick took a swing at Robert, and they continued down the driveway until they were out of view. Then Pineira heard three gunshots and realized Patrick had been wounded. Pineira identified defendant as the person he knew as Travieso.

Detective Fines also interviewed Henry Ayala. Ayala said that Travieso, also known as Marty, told him that someone tried to rob him and he was forced to shoot him. Ayala identified defendant as the person he knew as Travieso from a DMV photo.

The parties stipulated the cause of death for Patrick was gunshot wounds perforating the heart.

The case proceeded to a jury trial in June 2004. On July 1, 2004, during voir dire, the parties notified the court that a plea agreement had been reached. Defendant, with the assistance of counsel, entered a plea to second degree murder. Consistent with the plea, the trial court sentenced defendant to 15 years to life with 185 days of custody credits. The trial court dismissed count 2 and the special allegations based on the plea agreement.

On June 3, 2022, Rivers filed a petition under section 1170.95, since renumbered to section 1172.6. In opposing defendant's petition for resentencing, the prosecution identified

3

defendant as "Martin Rivers, 'Travieso' " in the title of their pleading. On February 5, 2025, the trial court found defendant made a prima facie showing for relief and ordered an evidentiary hearing on the petition.

On May 7, 2025, the trial court conducted an evidentiary hearing under section 1172.6, subdivision (d)(3). The trial court reviewed the abstract of judgment, the charging document, and the preliminary hearing transcript. Defendant, through counsel, objected to hearsay testimony from Detective Fines. The People agreed they would not rely on any hearsay testimony. The court granted the request to exclude hearsay testimony, noting, "Any Prop 115 will not be relied upon by the court." After hearing argument, the court denied defendant's petition, explaining, "[T]he court finds the defendant was the actual shooter beyond a reasonable doubt. He was the one who actually shot the victim. … [¶] In addition, the defendant, as he was getting in the vehicle, he pointed the gun at the witness and said would you want some too."

On February 22, 2026, defendant's counsel filed a brief identifying no appealable issues under *People v. Delgadillo* (2022) 14 Cal.5th 216. On March 26, 2026, defendant filed a supplemental brief. We granted defendant leave to file an amended supplemental brief. Defendant filed his amended supplemental brief on May 18, 2026, and then filed a letter explaining his filings which he framed as an ex parte motion.

The Legislature enacted Senate Bill No. 1437 (2017–2018 Reg. Sess.) (Senate Bill 1437) to eliminate murder liability under the natural and probable consequences doctrine and to limit application of the felony-murder rule. (*People v. Curiel* (2023) 15 Cal.5th 433, 448–449 (*Curiel*).) Now, except in cases of felony

4

murder, a principal must act with malice aforethought to be convicted of murder, and malice "shall not be imputed to a person based solely on his or her participation in a crime." (§ 188, subd. (a)(3).)

In addition to changing the law of murder prospectively, Senate Bill 1437 allowed defendants convicted of murder under a now-invalid theory to petition for resentencing under section 1172.6. (*Curiel, supra,* 15 Cal.5th at pp. 449–450.) The Legislature later enacted Senate Bill No. 775 (2021–2022 Reg. Sess.), which clarified that defendants convicted of attempted murder or voluntary manslaughter under a now-invalid theory are entitled to the same postconviction relief. (*People v. Estrada* (2024) 101 Cal.App.5th 328, 335.)

As relevant here, under section 1172.6, a defendant convicted of murder may petition the sentencing court to have his conviction vacated and to be resentenced on any remaining counts. (*People v. Strong* (2022) 13 Cal.5th 698, 707–708.) The defendant must allege: (1) the information allowed the prosecution to proceed under a theory of murder or attempted murder in which malice is imputed to the defendant based solely on his participation in a crime under the natural and probable consequences doctrine; (2) the defendant was convicted following a trial or accepted a plea in lieu of trial at which he could have been convicted of murder or attempted murder; and (3) the defendant could not now be convicted of murder or attempted murder because of changes to the law made by Senate Bill 1437. (§ 1172.6, subd. (a).)

If the defendant files a facially sufficient petition requesting appointment of counsel, the trial court must appoint counsel and hold a hearing to determine whether the petitioner

5

has made a prima facie showing of eligibility for relief. (§ 1172.6, subds. (b)(3) & (c).) If the defendant makes a prima facie showing, the court must hold an evidentiary hearing. (§ 1172.6, subd. (d).)

We address defendant's arguments in turn.

First, defendant argues the trial court relied on inadmissible hearsay in finding him ineligible in the evidentiary hearing. Defendant is correct that hearsay testimony from the preliminary hearing, that is otherwise not admissible under an exception to the hearsay rule, is inadmissible at an evidentiary hearing under section 1172.6, subdivision (d)(3). However, the trial court granted defendant's request to exclude any hearsay evidence from the preliminary hearing. Thus, the record reflects the trial court did not rely on hearsay testimony. Rather, George presented extensive nonhearsay testimony, and the trial court properly relied on this evidence.

Second, defendant argues there was insufficient evidence that he was the shooter in two related arguments. He contends that (1) George identified him in a photo as the shooter because of an officer's coercion; and (2) evidence that he held a gun after the shooting is insufficient to identify him as the shooter. On the first point, the record is silent regarding the details of how George identified defendant in the photo, except that he made the identification in the presence of law enforcement. Thus, there is no basis in the record to conclude that any officer improperly coerced George to identify defendant, and defendant's speculation is insufficient to establish error. (*People v. Thomas* (2012) 54 Cal.4th 908, 932.) Second and relatedly, substantial evidence supports the trial court's finding that defendant shot Patrick. The trial court properly relied on George's testimony that he

heard three gunshots and saw defendant holding a gun after seeing Patrick lying injured on the grass nearby. In addition, the trial court also could properly treat defendant's question to George, "Did you want some, too?" as an admission. From these facts, the trial court could reasonably infer the evidence supported a finding that defendant shot Patrick. As the fact finder, the trial court could make reasonable inferences from the evidence, and we must defer to those inferences. (*People v. Covarrubias* (2016) 1 Cal.5th 838, 890.) Moreover, there is substantial evidence in support of the trial court's conclusion that defendant was the shooter even if George did not actually see the shooting. (*Ibid.*)

Third, in his amended supplemental brief, defendant argues that Detective Fines, the prosecutor, and defense counsel violated section 745 of the California Racial Justice Act of 2020 (Racial Justice Act) by referring to him as "Travieso" during the preliminary hearing. He provides no further argument regarding how the detective's and lawyers' use of this nickname violates the Racial Justice Act, although we note the nickname is a word in Spanish that Google Translate website translates to mean mischievous with additional translations to include naughty, playful, impish, prankish, puckish, roguish, frolicsome, and willful. (Google.com <https://translate.google.com> [as of July 15, 2026].)

Regardless, Detective Fines initially used the nickname because both Pineira and Ayala stated that they knew defendant by the name of Travieso. Thereafter, Detective Fines, the prosecutor, and defense counsel used the nickname Travieso when discussing what Pineira and Ayala communicated to Detective Fines. Because this nickname identified defendant in

7

the evidence, we see no violation of the Racial Justice Act by these limited references. (*People v. Chhuon and Pan* (June 1, 2026, S105403) __ Cal.5th ____ [2026 Cal. Lexis 3009, 104–106]; see also § 745, subd. (a)(2) ["if the person speaking is relating language used by another that is relevant to the case" there is no violation of the Racial Justice Act].)

In rejecting an argument the defendant's gang nickname " 'invoked the perpetual foreigner stereotype' " in violation of the Racial Justice Act, the Supreme Court noted that "numerous witnesses knew and used his nickname." (*People v. Chhuon and Pan*, *supra*, __ Cal.5th ____ [2026 Cal. Lexis 3009, 105–106].) While there is no evidence in the record here that Travieso is a gang nickname, there is evidence that two witnesses identified defendant by his nickname. Finally, without argument, defendant also points out that the prosecution included the Travieso nickname in the heading in their response to his petition for resentencing. We note however that the nickname was not used in the text of the pleading and was presented in quotes next to defendant's full name only once. In addition, this nickname was used in the preliminary hearing, and could serve to identify defendant in the record. Thus, there is insufficient context, evidence, or argument to establish a violation of the Racial Justice Act.

Finally, we decline to exercise our discretion to independently review the record. (*People v. Delgadillo*, *supra*, 14 Cal.5th at p. 226.)

8

## DISPOSITION

The trial court's order denying defendant's petition for resentencing under section 1172.6 is affirmed.

VIRAMONTES, J.

WE CONCUR:

STRATTON, P. J.

SCHERB, J.

9